UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| SCOTT M. EGLY, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | CIVIL NO. 1:16cv417 |
|  | ) |  |
| NANCY A. BERRYHILL, Acting | ) |  |
| Commissioner of Social Security, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

OPINION AND ORDER

This matter is before the court for judicial review of a final decision of the defendant Commissioner of Social Security Administration denying Plaintiff's application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) as provided for in the Social Security Act. 42 U.S.C. §416(I). Section 205(g) of the Act provides, inter alia, "[a]s part of his answer, the [Commissioner] shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the case for a rehearing." It also provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. §405(g).

The law provides that an applicant for disability insurance benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months. . . ." 42 U.S.C. §416(i)(1); 42 U.S.C. §423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological

abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §423(d)(3). It is not enough for a plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude the plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (7th Cir. 1962), cert. denied, 372 U.S. 945 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill. 1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir. 1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir. 1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the [Commissioner's] findings." *Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir. 1984) citing *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir. 1982); 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir. 1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1410, 1427 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir. 1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. §405(g), unless there has been an error of law." *Garfield*, *supra* at 607; *see also Schnoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir. 1980).

In the present matter, after consideration of the entire record, the Administrative Law Judge ("ALJ") made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through June 30, 2017.

2. The claimant has not engaged in substantial gainful activity since February 1,

2012, the alleged onset date (20 CFR 404.1571 *et seq.*, and 416.971 *et seq.*).

3. The claimant has the following severe impairments: paroxysmal atrial fibrillation with palpitations, left ventricular hypertrophy, obesity, mild arthritis of the knees, headaches, history of aortic valve replacement with a normally functioning bioprosthetic valve/aortic insufficiency, and reported seizures (20 CFR 404.1520(c) and 416.920(c)).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.956(a): that is, the claimant can: sit six hours in an eight hour workday; stand and/or walk two hours per eight hour workday; lift, carry, push, and pull 10 pounds occasionally and frequently; occasionally kneel, crouch, crawl, balance, and squat; and occasionally climb stairs and ramps 1-2 flights. The claimant cannot climb ladders, ropes, or scaffolds but he can occasionally bend and stoop in addition to what is required to sit. The claimant cannot work within close proximity of exposed and open heights or within close proximity of open and dangerous machinery.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565 and 416.965).

7. The claimant was born on September 24, 1981, and was 30 years old which is defined as a younger individual age 18-44, on the alleged disability onset date (20 CFR 404.1563 and 416.963).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564 and 416.964).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82041 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569, 404.1569(a), 416.969, and 416.969(a)).

11. The claimant has not been under a disability, as defined in the Social Security Act, from February 1, 2012, through the date of this decision (20 CFR 404.1520(g) and 416.920(g)).

(Tr. 17- 30).

Based upon these findings, the ALJ determined that Plaintiff was not entitled to disability benefits. The ALJ's decision became the final agency decision when the Appeals Council denied review. This appeal followed.

Plaintiff filed his opening brief on May 30, 2017. On August 31, 2017, the defendant filed a memorandum in support of the Commissioner's decision. Plaintiff has declined to file a reply. Upon full review of the record in this cause, this court is of the view that the ALJ's decision should be affirmed.

A five-step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir. 1988); *Bowen v. Yuckert*, 107 S.Ct. 2287, 2290-91 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops the inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n.2 (7th Cir. 1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n.2 (7th Cir. 1985); accord *Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir. 1984). From the nature of the ALJ's decision to deny benefits, it is clear that step five was the determinative inquiry.

Plaintiff has submitted the following medical statement of facts. On February 1, 2012, Plaintiff's chest was burning on the right side, he felt like his heart was racing and pounding very hard, and he had occasional sweatiness. On February 9, 2012, Plaintiff suffered diffuse anterior chest pain for a week after having cold symptoms. Six days later he was admitted to the hospital due to atrial fibrillation. By March 8, 2012, the need for surgical intervention became clear. On March 22, 2012, Plaintiff underwent a sleep study, indicating the need for CPAP. Eight days later, Dr. Moront performed open heart surgery on Plaintiff. However, Plaintiff still had symptoms. For example, in April 2012 he had a dyspnea. In May 2012 he had pleural effusions. In June 2012, he had chest discomfort and tingling in his left arm.

In June 2012, SSA consultant Neil Shamburg, PhD, reviewed the record, examined Plaintiff, and opined "Very, very severe limitations . . . in this severely depressed man, with regard to his ability to respond appropriately to most work pressures, in all work settings now." Plaintiff's symptoms continued. For example, in August 2012 he had low blood pressure and a warm sensation come over him. Also in August 2012 he had left face discomfort and headache. In September 2012 he had acute dysarthria with notable obstructive sleep apnea. In October 2012 he had three days of sharp chest pain. Also in October 2012 he had dizziness and near-syncope. In November 2012 he had worsening headaches on and off for several weeks along with chest discomfort. In December 2012 Plaintiff experienced palpitations.

In February 2013, Plaintiff presented to the ER and John Wagel, M.D., documented that Plaintiff had problems with an increased heart rate while sitting, fluctuating between 99 and 147. Plaintiff also had left face tingling, chest wall cramping, diarrhea, and a fuzzy feeling to his head with dizziness and lightheadedness. In June 2013, Plaintiff again presented to Dr. Wagel in the

5

ER, after experiencing palpitations, chest discomfort, and a racing heart. Plaintiff had a headache, was dizzy, near syncope, sweating, and cold to the touch. Dr. Wagel instructed Plaintiff to return directly to the ER if any further problems arose.

In support of remand or reversal, Plaintiff argues that the ALJ erred by not specifically discussing purported opinions by Drs. James Lebamoff and John Wagel. Tr. 995-96, 1465. In March 2013 Dr. Lebamoff advised Plaintiff to return to the ER if his conditions returned, Tr. 996. In June 2013 Dr. Wagel advised Plaintiff to return to the ER if any problems arose, Tr. 990. And in November 2014 Dr. Lebamoff advised Plaintiff to return to the ER if his symptoms worsened, Tr. 1465.

Plaintiff correctly points out that an ALJ must specially consider medical opinions by treating doctors. But Plaintiff fails to prove that either of these doctors satisfied the agency's definition of treating providers. Even more importantly, Plaintiff fails to prove that the doctors' statements constituted opinions. "Medical opinions are statements from physicians…that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 1527(a)(2). The statements by Drs. Wagel and Lebamoff lack any of the characteristics of a medical opinion. Most relevantly, they said nothing about what Plaintiff could do despite his impairments, let alone his actual symptoms. In fact, they said nothing about Plaintiff's treatment; they merely advised Plaintiff about treatment if certain conditions occurred. The ALJ did not need to mention this common medical advice, let alone apply to these statements the standards applicable to the assessment of medical opinions. *See Rice*, 384 F.3d at 371 (decision need not evaluate every piece of evidence); *Books v. Chater*, 91 F.3d 972, 980 (7th Cir.

1996) (court must only be able to trace ALJ's consideration of claimant's principal evidence and reasons for rejecting it).

Plaintiff also contends that these statements do not support the ALJ's conclusion that Plaintiff's physical and mental conditions improved shortly after an early 2012 aortic valve replacement. However, as the ALJ explained, Plaintiff's own doctor reported in June 2012 that Plaintiff's heart condition did not preclude work, Plaintiff's ejection fraction was normal by November 2012, and Plaintiff did not receive cardiac treatment between June 2013 and January 2015, when the cardiologist noted that his stable condition warranted routine treatment. Tr. 27. Clearly, nothing in these statements contradicts the reasonableness of the ALJ's conclusion that Plaintiff's condition improved shortly after early 2012. Tr. 18, 26, 210.

Plaintiff also references "repeat" visits to the emergency room, yet cites to just one visit in March 2013, one in June 2013, and one in November 2014. Plaintiff does not explain how the ALJ unreasonably assessed these three hospital visits, let alone how they bolstered any medical or lay opinion evidence (if there were any) that Plaintiff would need to miss an irregular amount of work.

In any event, this court does not reweigh evidence considered by the ALJ. *Rice*, 384 F.3d at 369. The ALJ noted that Plaintiff occasionally complained of chest pain following his surgery. Tr. 26. The ALJ specifically mentioned the June 2013 hospital visit, at which Plaintiff's heart rate was normal and no further treatment was prescribed. Tr. 27, 989-90. The ALJ noted that pneumonia prompted the November 2014 hospitalization, at which Plaintiff denied fatigue, headaches, pain, weakness, anxiety, and depression, among other things. Tr. 25. None of these visits undermines the reasonableness of the ALJ's conclusion that Plaintiff could work with a

7

heart condition after the early 2012 surgery.

While unclear, Plaintiff appears to argue briefly that his own reports of adequate mental functioning to doctors and counselors did not contradict consultative-examining psychologist Dr. Neil Shamburg's June 2012 opinions. Dr. Shamburg opined, among other things, that at that time, untreated depression caused moderate to severe problems executing instructions and maintaining concentration, severe problems responding to coworkers, and very severe problems responding to work pressures. Tr. 766. However, an ALJ does not owe any special deference to the opinions of a one-time examiner like Dr. Shamburg. *See Coffee v. Colvin*, No. 1:14-CV-1303-WTL-DML, 2015 WL 2405491, at *5 (S.D. Ind. May 19, 2015); *Murphy v. Astrue*, No. 11 C 831, 2011 WL 4036136, at *10 (N.D. Ill. Sept. 12, 2011) (opinions by one-time examining doctors deserve less deference than opinions by treating doctors).

Moreover, the record is replete with uncontested evidence, that the ALJ identified, of normal psychological functioning before and after Dr. Shamburg's June 2012 exam. For example: (1) Plaintiff's May 2012 report to the agency did not check boxes for mental limitations and mentioned that only physical problems interfered with any ability to follow instructions, Tr. 19, 412; (2) In early 2013, Plaintiff twice mentioned no psychiatric symptoms to neurologists, whose mental status exams showed no abnormalities, Tr. 19, 950, 945; (3) Counselors consistently noted Plaintiff's good mood and easy sociability through June 2013, Tr. 20; (4) Plaintiff denied psychological problems to neurologists through November 2014, Tr. 1392; and (5) no treating doctors or counselors offered any opinions of psychological limitations, Tr. 28; *see Castile v. Astrue*, 617 F.3d 923, 929-30 (7th Cir. 2010) (failure of treating doctors to opine that Plaintiff cannot work discredits allegations of disabling limitations). The ALJ further

explained that therapists and neurologists repeatedly documented Plaintiff's adequate functioning and reports of adequate functioning in the months and years after Dr. Shamburg's June 2012 exam. Tr. 18-22, 28. In light of all the above, this court concludes that the ALJ's decision to give Dr. Shamburg's opinions little weight was reasonable.

Next, Plaintiff appears to argue that the ALJ unreasonably contrasted Dr. Farrukh Khan's June 2012 opinion that Plaintiff could choose to work with his cardiac conditions with Plaintiff's February 2015 testimony of disabling fatigue. Plaintiff contends that the ALJ's reliance on Dr. Khan's opinion was unreasonable because he did not specialize in psychology and Plaintiff was diagnosed with depression. However, the ALJ's finding about the claimant's subjective symptoms is entitled to great deference and should be upheld unless patently wrong. *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008); *Schmidt v. Astrue*, 496 F.3d 833, 843 (7th Cir. 2007). Reviewing courts examine whether a determination about subjective symptoms was reasoned and supported; only when an ALJ's decision "lacks any explanation or support . . . will [the court] declare it to be 'patently wrong.'" Elder, 529 F.3d at 413-14 (citations omitted).

The mere diagnosis of a condition does not show that the condition significantly affects a claimant's work-related functioning. *Schmidt v. Barnhart*, 395 F.3d 737, 745-46 (7th Cir. 2005). In the present case, the Plaintiff's argument fails because he does not contest most aspects of the ALJ's thorough explanation, discussed above, for not relying on any assertion that depression significantly reduced Plaintiff's work-related functioning for the requisite 12 consecutive months. Tr. 19-22. Dr. Khan thus did not need to specialize in psychology to opine that Plaintiff could work with his heart condition.

Plaintiff also contests minor aspects of the ALJ's assessment of Plaintiff's psychological

9

limitations. Plaintiff argues that his decision to cease psychological counseling in 2013 did not reasonably contradict any assertions of disabling mental limitations because his insurance purportedly only reimbursed enough for couples therapy. However, the ALJ explicitly considered Plaintiff's February 2015 testimony that he ceased family counseling in 2013 because of lack of reimbursements. Tr. 18, 51-52. Yet the ALJ reasonably found Plaintiff's treatment history clashed with assertions of extreme mental impairments because Plaintiff admitted that he did not inquire about low cost counseling and did not resume counseling when his insurance reimbursed new visits in 2014 and 2015. Tr. 18, 51-52.

Plaintiff also challenges the reasonableness of the ALJ's determination that Plaintiff's admitted daily activities clashed with Plaintiff's complaints of significant mental limitations. Clearly, however, an ALJ may properly consider a claimant's description of his daily activities in assessing whether his testimony about the effects of his impairments was reliable. *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016) (citations omitted).

In the present case, Plaintiff does not contest the ALJ's explanation that shortly after Plaintiff's alleged onset date in February 2012, he cared for his personal needs, washed dishes, walked the dog, drove, fixed meals, shopped, and visited friends in addition to attending his daughter's softball games. Tr. 21. When combined with the other evidence discussed above, these admissions clearly show that Plaintiff's alleged mental limitations—including, most specifically, purported anxiety about being around others—was not disabling. Finally, the ALJ noted that the VE testified that Plaintiff could do jobs in the national economy even if Plaintiff reliably testified to significant psychological impairments. Tr. 24.

Accordingly, as the ALJ properly considered the medical opinions and evidence, such that

his decision is supported by substantial evidence, the decision will be affirmed.

Conclusion

On the basis of the foregoing, the decision of the ALJ is hereby AFFIRMED.

Entered: October 31, 2017.

s/ William C. Lee  
William C. Lee, Judge  
United States District Court